# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| Crash, Inc., | § | |
| | § | Misc. Action No. _____ |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | (Relates to U.S.D.C. Western District of |
| | § | Oklahoma Case No. 5:19-cv-00796-C) |
| | § | |
| New Prime, Inc. d/b/a Prime, Inc. | § | |
| | § | |
| *Defendant.* | § | |

## CRASH, INC.'S MOTION TO QUASH AND MOTION FOR PROTECTION REGARDING NEW PRIME, INC.'S SUBPOENA FOR ENTRY OF PREMISES AND INSPECTION

**To the Honorable United States Judge of Said Court:**

COMES NOW, Crash, Inc., by and through undersigned counsel, and respectfully files its motion to quash and motion for protection regarding New Prime, Inc.'s subpoena which issued out of a lawsuit currently pending before the United States District Court for the Western District of Oklahoma, brought by Plaintiff Lecinda Zimmerman against Defendant New Prime, Inc., regarding the death of Plaintiff's daughter while riding in a 2017 Buick Encore in Oklahoma.

Crash, Inc. is ***not*** a party to the Oklahoma lawsuit. Instead, Crash, Inc. is a Texas for-profit corporation located and conducting business in Dallas, Texas. Crash, Inc. is the current owner and has possession of the 2017 Buick Encore, which is being stored at Crash, Inc.'s world-renowned storage facility in Dallas, Texas.

Crash, Inc.'s business is essentially providing non-disturbed, safe storage for vehicles, maintaining chain of custody, and providing the necessary resources to customers for vehicle inspections. Crash, Inc.'s customers are typically employees (and attorneys) and experts who represent some of the largest corporations in the world in litigation. Plaintiffs who have been severely injured in automobile and other types of accidents also have attorneys and experts routinely inspect vehicles at Crash, Inc.'s premises.

For decades, these employees and experts have routinely traveled to Crash, Inc.'s warehouse/facilities in Dallas to conduct vehicle and other inspections. These experts and employees come not only from the United States, but also from as far away as Korea, Japan, Germany, and India. There have been over a thousand inspections of vehicles at Crash, Inc., including by companies such as Toyota, General Motors, Ford, Chrysler, Mercedes, Honda, Kia, Hyundai, Nissan, Mazda, Mitsubishi, Volkswagen, Adient, Honeywell, Utility Trailer, and many, many others. Each time there has ever been an inspection, a reasonable and necessary fee has been paid to accommodate Crash, Inc. for its time, labor, and services.

However, unlike every inspection which has ever occurred at Crash, Inc.'s facilities, in this matter, New Prime, Inc. does not want to pay *any* fee for Crash, Inc.'s time, labor, and services. Rather, New Prime's Subpoena commands Crash, Inc. to permit New Prime to enter Crash, Inc.'s business facilities in Dallas, Texas, to make Crash, Inc.'s employees perform work for New Prime, and to permit New Prime to inspect the Buick Encore – completely free of charge.

Accordingly, Crash, Inc. has filed this instant motion. In having to comply with the subpoena from New Prime, Crash, Inc. will incur significant expense and undue burden.

New Prime's Subpoena will not only command physical space within Crash, Inc.'s business facilities (which Crash could otherwise provide to paying customers), but New Prime's Subpoena also requires Crash, Inc.'s employees to prepare the facilities for the inspection, and to transport and ready the Buick Encore for inspection. Crash, Inc.'s employees have to use heavy equipment such as two very large forklifts (see below) to transfer vehicles from storage locations (half of the time located off the ground on racks, see below) to the specific bay where the inspection will occur. This can be as far away as the length of a football field!






Crash, Inc. also has a technician present for the inspection to answer questions or assist with Crash's other provided equipment and resources. In addition to providing snacks, drinks, catered lunch, full-kitchen area, conference room, and restroom facilities, Crash also maintains premises and liability insurance. Further, with the Covid-19 pandemic, Crash, Inc. will bear additional costs to clean and disinfect the facilities prior to and after New Prime's inspection.

There are obviously many other expenses/bills that Crash, Inc. needs income coming in in order to pay. These other expenses, such as security (with multiple cameras to protect the property, located in a high crime area), payroll, electrical bills, plumbing, hydraulics, etc., are not given to Crash for free, as New Prime apparently believes.

All of this costs time and money, which Crash, Inc. should not have to bear the burden or expense of as Crash, Inc. is not a party to the Oklahoma lawsuit.

Accordingly, Crash, Inc. moves to quash and seeks entry of a protective order regarding New Prime's subpoena because the subpoena would cause Crash, Inc. significant expense and undue burden to comply.

New Prime is improperly using the subpoena solely as a mechanism to circumvent having to make payment of the customary, set rates for entry to Crash, Inc.'s facility and for the time and expense for Crash, Inc.'s employees to prepare the Buick Encore for inspection by New Prime.

New Prime should be required to compensate Crash, Inc. based upon the usual and customary rates for entry and inspection.

## I. Facts

1.    On June 17, 2020, Crash, Inc. was served with New Prime's Notice of Subpoena and Subpoena (hereinafter, the "Subpoena"). *See* **Exhibit "A"** Subpoena.

2.    The subpoena commands that, on July 23, 2020, at 11:00 a.m., Crash, Inc. must permit New Prime to enter Crash, Inc.'s premises located at 4701 Bengal Street, Dallas, Texas, and permit New Prime to inspect the Buick Encore. *Id.*

3.    The subpoena was issued by New Prime's attorney under the auspices of jurisdiction by the United States District Court of Oklahoma for purposes of the Oklahoma lawsuit. *See id.*

4.    Crash, Inc. is not a party to the Oklahoma lawsuit. *See* **Exhibit "B"** Affidavit of Lorenzo Kirk Parks.

5.    Crash Inc. acquired and is the current owner of the 2017 Buick Encore, which is being stored at Crash, Inc.'s premises in Dallas, Texas. *See id.*

6.    Crash, Inc. operates a state-of-the-art facility with over 100,000 square feet of space that consists of 3 storage units, 6 inspection bays, restrooms, conference rooms, and break rooms. Each of the 6 inspection bays have air conditioning/heating (very unusual in the vehicle storage business) and outfitted with the same equipment and tools including, but not limited to, tool boxes on wheels (with every imaginable tool needed), rolling floor lights, floor jacks, and vehicle lifts. *See id.*

7.    Below are some photos which show a part of Crash, Inc.'s facilities:

 



8.    Crash, Inc.'s customary, set rate for a vehicle inspection is $920.00 minimum ($200.00 per vehicle in each bay plus $180.00 per hour for technician time (a four hour minimum for technician time)). After 5 p.m., the technician time is $500.00 per hour. To hold an inspection time, a deposit must be paid at least 10 days before the inspection time. Crash also provides vehicle storage at set rates. *See id.*

9.    Crash's inspection fee includes, but is not limited to, Crash's technician's use of heavy machinery, such as a forklift, to retrieve the vehicle from the storage unit and transporting it to an inspection bay. During the inspection, Crash's technician is present to provide technical or physical help to customers conducting the inspections. *See id.*

10.   In addition, Crash's employees clean, sanitize, and prepare the inspection bay, restrooms, kitchen, and conference room areas prior to and after each scheduled inspection. Crash provides drinks, snacks, and catered lunch to inspection customers. Crash also maintains premises and liability insurance. *Id.*

11.   Individuals and companies from all over the world utilize and pay for Crash's vehicle inspection facilities and services; such as, auto manufacturers (Toyota, Kia, Hyundai, Ford, Mitsubishi - just to name a few), attorneys, and their experts (i.e., vehicle design engineers, biomechanics, and occupant kinematics). *Id.*

12.   Crash, Inc. is a Texas for-profit corporation formed in 1999. *See* **Exhibit "C"** Affidavit of Jennifer Bross.

13.   Crash, Inc. is not owned or controlled by the Tracy Law Firm, it is not owned by Todd Tracy, and it is not owned or controlled by anyone employed by the Tracy Law Firm. It is a separate legal entity. *Id.*

14.   The Tracy Law Firm does use Crash, Inc.'s services on a weekly basis. However, ***every single time*** the Tracy Law Firm pays Crash, Inc. when the Tracy Law Firm's experts use Crash's inspection bays and resources. Crash, Inc. is furnished a 1099 by the Tracy Law Firm as do all other companies/individuals that utilize Crash, Inc.'s facilities and services. *Id.*

15.   Crash, Inc.'s fees, services, and protocol were provided to New Prime when it requested an inspection time. *See* **Exhibit "B"** Affidavit of Lorenzo Kirk Parks and at attachment 1 (invoice), 2 (email), and 3 (email).

## II. Argument and Authorities

16.   Federal Rule of Civil Procedure 45 governs discovery requests to non-parties made through subpoena. Fed. R. Civ. P. 45; *see In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998). Rule 45 delineates between the court that issued the subpoena (the "Issuing Court")—always "the court where the action is pending"—and "the court for the district in which compliance with the subpoena is required" (the "Compliance Court"). Fed. R. Civ. P. 45(a)(2), (d)(3), (f). The Compliance Court is responsible for matters relating to the enforcement of the subpoena, and those matters include motions to quash or modify a subpoena. Fed. R. Civ. P. 45(d)(3).

17.   Federal Rule of Civil Procedure 45(d)(2)(B) permits a person commanded to produce documents or tangible things or to permit inspection to serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises.

18.   Further, Federal Rule of Civil Procedure 45(d)(3) provides that, on timely motion, the court for the district where the compliance is required must quash or modify a subpoena that fails to allow a reasonable time to comply; requires a person to comply beyond the geographical limits specified in Rule 45(c); requires disclosure of a privileged or protected matter; or subjects a person to undue burden.

19.   Crash, Inc. objects, moves to quash, and seeks entry of a protective order because the subpoena would cause Crash, Inc. significant expense and undue burden to comply with the production and inspection. Fed. R. Civ. P. 45(d)(2)(B), 45(d)(3), 26(c)(1)(A)-(B).

20.   In having to comply with New Prime's Subpoena, Crash, Inc. will incur significant expense and undue burden as New Prime seeks entry to business facilities and inspection of the vehicle free of charge.

21.   New Prime's subpoena will not only command physical space within Crash, Inc.'s business facilities which Crash could otherwise provide to paying customers; rather, New Prime's Subpoena also requires Crash, Inc.'s employees to prepare the facilities for the inspection, and to transport and ready the Buick Encore for inspection (see previously discussed details *supra*).

22.   All of this costs time and money, which Crash, Inc. should not have to bear the burden or expense as it is not a party to the Oklahoma lawsuit.

23.   New Prime should be required to not only schedule a date and time for vehicle inspection that is agreed to by Crash, Inc., but new New Prime should also be required to compensate Crash, Inc. based upon the usual and customary rates for entry and inspection. Fed. R. Civ. P. 45(d)(2)(B)-(d)(3).

24.   Crash, Inc.'s motion is not presented to create a delay but for the purpose of achieving justice and preventing any prejudicial effects on Crash, Inc. Crash, Inc. can not long survive as a business if it is forced to work for others for free, and Dallas will have lost one of the best (if not the best) vehicle storage facilities in the country were that to occur.

25.   Prior to filing this motion, Crash, Inc. informed New Prime about Crash's inspection fees and requirements. New Prime said they did not want to pay one penny to Crash, Inc.

26.   Again, New Prime seeks to conduct a vehicle inspection at Crash's facility and to utilize Crash's services and employee labor (and time) without making payment of Crash's customary fees, let alone any money at all. As such, Crash, Inc. requests an award of its reasonable expenses, including attorneys' fees, incurred in bringing this motion and having it determined by the Court. Fed. R. Civ. P. 26(c)(3), 37(a)(5).

## III. Conclusion and Prayer

27.   WHEREFORE, PREMISES CONSIDERED, Crash, Inc. respectfully requests that the Court grant its motion to quash and motion for protective order, and award its reasonable expenses—including attorneys' fees—incurred in bringing this motion and having it determined by the Court, and for such other relief that the Court deems Crash, Inc. is justly entitled.

Respectfully submitted,

**The TRACY firm**


  /s E. Todd Tracy
_____
E. Todd Tracy (Lead Counsel)
State Bar No. 20178650
TTracy@vehiclesafetyfirm.com
Andrew G. Counts
State Bar No. 24036408
ACounts@vehiclesafetyfirm.com
4701 Bengal Street
Dallas, Texas  75235
(214) 324-9000 – Phone
(972) 387-2205 – Fax

**Attorneys for Crash, Inc.**


## CERTIFICATE OF CONFERENCE

   The undersigned avers that the parties have been in discussion regarding the matters in this motion, that New Prime has refused to pay any fee whatsoever, and that New Prime has said it will not withdraw the subpoena. Accordingly, it is necessary to file this motion and have this issue resolved by the Court.


  /s E. Todd Tracy
_____
E. Todd Tracy
Andrew G. Counts

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of July, 2020, I caused to be electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means. Moreover, counsel for Crash, Inc. have forwarded this filing to the attorneys for New Prime, Inc. via e-mail.


  /s E. Todd Tracy
E. Todd Tracy
Andrew G. Counts